UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 22-047-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ERICH MATHES STORCK, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Erich Storck was charged with two counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Counts 1 and 2), possession with intent to distribute less than 50 kilograms of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 3), and possessing firearms in furtherance of a drug trafficking crime (Count 4). Following a jury trial on April 4 and 5, 2023, a jury convicted Storck of Counts 1 and 2. The jury also convicted him of the lesser included offense of possession of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 844 with respect to Count 3. He was acquitted of Count 4.

Storck is scheduled to be sentenced on July 21, 2023. The Presentence Investigation Report ("PSR") recommends a total offense level of 26 and a criminal history category of I, which produces a guidelines range of 63 to 78 months. Storck has filed three substantive objections to the PSR. Before addressing Storck's objections, it is necessary to briefly explain the factual background underlying Storck's convictions.

I.

The central facts with respect to Count 1 are as follows: Officers from the Boyle County, Kentucky Sheriff's Department responded to reports of an individual passed out near the entrance of the Northpoint Training Center, a medium security prison, on May 25, 2020. Upon arrival, a deputy located Storck passed out against a tree, next to his motorcycle. Storck subsequently failed a field sobriety test and was placed under arrest. A search of the motorcycle produced a loaded Walther pistol. A records check confirmed that Storck was a convicted felon.

Counts 2 and 3 involve conduct that occurred on November 8, 2021, in Jessamine County, Kentucky. Officers from the Nicholasville Police Department responded to 501 Courchelle Drive in Nicholasville in reference to a possible gunshot through a residence. The homeowner reported that she believed a bullet had entered her home through the upstairs bathroom window from the neighboring house located at 505 Courchelle Drive.

Officers proceeded to 505 Courchelle Drive, where Storck resided with his mother. The officers eventually located Storck, who refused to come out of a closet in an upstairs bathroom. Storck likewise refused the officers' repeated commands to put down any weapons that he may have and come out with his "hands up". After hearing a gunshot from Storck's location, the officers retreated and set up a perimeter around the residence. And rather than follow the growing number of officers' commands to surrender, Storck continued shooting from inside the residence. Storck surrendered approximately an hour later.

Police visited 501 Courchelle Drive to collect evidence. Officers observed that two rounds had entered the upstairs bathroom window and penetrated a wall. One of the bullets had exited the bathroom wall and was located on the floor inside the bathroom closet. Officers

subsequently executed a search warrant at 505 Courchelle Drive and seized a Palmetto State Arms rifle, a Sig Sauer pistol, various types and amounts of ammunition, and several bags and jars containing marijuana. The residence also contained a small marijuana grow operation.

## II.

### A.   Acceptance of Responsibility

Storck objects to paragraphs 16 and 37 of his PSR because he is given zero points for acceptance of responsibility. He contends that he should receive a two-level reduction under U.S.S.G. § 3E1.1. This section provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."

While a conviction by trial does not automatically preclude a defendant from consideration under this section, the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. § 3E1.1 cmt. app. n. 2. In rare situations, the defendant may clearly demonstrate acceptance of responsibility even though he exercises his constitutional right to a trial. *Id.* For instance, this may occur when a defendant goes to trial to preserve issues that do not relate to guilt, such as a constitutional challenge to a statute. A determination that a defendant has accepted responsibility is based primarily on pretrial statements and conduct. *Id.* Further, a defendant has the burden of demonstrating by a preponderance of the evidence that a reduction for acceptance of responsibility is warranted. *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001).

Storck maintains that he was willing to plead guilty to Counts 1, 2, and the lesser included offense of Count 3 (i.e., the same counts of which he was convicted) on the condition that the government dismiss Count 4. He asserts that he proposed this offer in writing to the

United States, but the government rejected it. Storck also contends that he did not contest his guilt on Counts 1, 2, and the lesser included offense of Count 3 at trial. Essentially, he contends, he was "forced" to go to trial because of the government's refusal to dismiss Count 4, of which he was acquitted.

Storck cites *United States v. Woods*, 323 F. App'x 437 (6th Cir. Apr. 23, 2009), in support of his assertion that a defendant can proceed to trial and still receive credit for acceptance of responsibility. In that case, Woods challenged the district court's denial of acceptance credit, arguing that he had admitted his factual guilt and "took the case to trial only to assert his justification defense." *Id.* at 443. The Sixth Circuit affirmed the sentence, noting that Woods' argument failed for several reasons. Storck relies on the Sixth Circuit's statement that Woods "never clearly admitted his possession of the firearm either at trial or in his pretrial statements." *Id.* But the court denied Woods' motion for various reasons, noting that he only raised the justification defense with respect to one of the two charges against him. The court did not state that Woods necessarily would have been entitled to acceptance credit if he had admitted guilt earlier.

The decision in *United States v. Gaspar-Felipe*, 4 F.4th 330 (5th Cir. 2021) is more on point here. Gaspar-Felipe was charged with two counts of transporting an illegal alien for the purpose of commercial advantage and private financial gain (Counts 1 and 2), one count of transporting an illegal alien for the purpose of commercial advantage and private financial gain resulting in death (Count 3), and illegal reentry (Count 4). The defendant was willing to plead guilty to Counts 1, 2, and 4, but would not plead guilty to Count 3. Because the government would not offer a plea deal that excluded a guilty plea to Count 3, Gaspar-Felipe proceeded to trial. *Id.* at 335-36.

- 4 -

The jury found Gaspar-Felipe guilty as charged in Counts 1, 2, and 4.  For Count 3, the jury found him guilty of transporting an illegal alien for commercial advantage and private financial gain but it found, by answering a special interrogatory, that his offense did not result in the alien's death.  Gaspar-Felipe objected to his PSR on various grounds, including its failure to include an adjustment for acceptance of responsibility under § 3E1.1.  Alternatively, he requested a downward variance because he was acquitted of the alien's death and had been willing to plead guilty to "most of the counts on which he was convicted."  The district court denied Gaspar-Felipe's objections and denied his motion for a variance, sentencing him to 78 months' imprisonment.

Gaspar-Felipe appealed to the Fifth Circuit, which affirmed his sentence.  It concluded that the defendant "was not entitled to this adjustment because he put the government to its burden of proof at trial." *Id.* at 342.  Like Storck, Gaspar-Felipe argued that he only proceeded to trial to contest his responsibility for a single charge.  He also pointed to the guidelines commentary stating that, in rare situations, a defendant may clearly demonstrate acceptance of responsibility even though he proceeds to trial.  *Id.* (citing § 3E1.1(a) cmt. app. n. 2.)  Rejecting these arguments, the court observed that, while Gaspar-Felipe expressed a willingness before trial to plead guilty to Counts 1, 2, and 4, he did not actually do so.  "Nothing stopped him from pleading guilty to those charges and going to trial only on Count Three." *Id.* at 342-43.  Like Storck, Gaspar-Felipe proceeded to trial on all counts and "put the government to its burden of proof by denying the essential factual elements of [his] guilt." *See id.* at 343.

Storck makes much of conceding his guilt at trial.  In his objections to the PSR, he states that "counsel conceded to the jury that the Defendant was guilty of [the § 922(g) charges.]"  But counsel's comments to the jury in opening or closing statements do not alter

- 5 -

the government's burden of proof. Once Storck proceeded to trial on these charges, the government was tasked with proving beyond a reasonable doubt that Storck committed the crimes charged. Accordingly, he is not entitled to a two-level reduction for acceptance of responsibility.

### B. Multiple Gun Enhancement

Next, Storck objects to paragraph 20 of the PSR, which assigns a 2-level increase under U.S.S.G. § 2K2.1(b)(1)(A) because "the offense" involved three firearms. The conduct underlying Count 1, which involved a Walther pistol, occurred on May 25, 2020, in Boyle County. The conduct underlying Count 2, which involved a Sig Sauer pistol and a Palmetto State Arms rifle, occurred on November 8, 2021, in Jessamine County. While Storck does not dispute that the Counts 1 and 2 should be grouped under § 3D1.2, he argues that he should not receive the two-level increase because the three firearms were not involved in the same course of conduct.

"All counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. The guidelines recognize that, "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." § 3D1.2(d). Section 3D1.2 explicitly provides that offenses covered by U.S.S.G. § 2K2.1 are to be grouped under § 3D1.2(d). Courts have interpreted this as mandatory. *See e.g., United States v. Garcia*, 946 F.3d 1191, 1203 (10th Cir. 2020); *United States v. Rosa-Hernandez*, 828 F. App'x 823, 825 n.2 (3d Cir. 2020). *See also* § 3D1.2 ("For multiple counts of offenses that are not listed, grouping under this subsection may or may not be appropriate.").

The probation officer and government suggest that the number of firearms automatically should be aggregated because Counts 1 and 2 are grouped together. They bolster this argument by citing § 3D1.3(b), which provides that, in the case of counts grouped together pursuant to § 3D1.2(d), "the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B, and C of Chapter 3." But this provision can be read consistently with the defendant's position.

Section 2K2.1(b), which provides for the two-level increase, is entitled "Specific Offense Characteristics." Section 1B1.3 of the guidelines defines relevant conduct, which should be used to determine specific offense characteristics. "With respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct includes "all acts or omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."

The commentary to § 1B1.3 recognizes that relevant conduct may include offenses for which the defendant was or was not convicted. Cmt. app. n. 5. Regardless of whether the conduct at issue constitutes a conviction or uncharged conduct, the commentary suggests that it must have been a component of a common scheme or plan or part of the same course of conduct. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, a common purpose, or a similar modus operandi. *Id. See Sheppard v. United States*, 2018 WL 1738214, at *2 (6th Cir. 2018) ("The district court explained that, because Sheppard's [§ 922(g)(1)] convictions were grouped together pursuant to USSG § 3D1.2, the firearms associated with each distinct conviction counted for purposes

of § 2K2.1(b)(1) *so long as his firearms possession was 'part of the same course of conduct or common scheme or plan.'*") (emphasis added).

Storck relies on *United States v. Bowens*, 938 F.3d 790 (6th Cir. 2019), to demonstrate that the enhancement should not apply. Bowens was convicted of possessing firearms while being an unlawful user of marijuana. At the time of his arrest, he and his co-defendant were in the backseat of a vehicle with two firearms present. The government obtained a two-point enhancement under § 2K2.1(b)(1)(A) by presenting evidence of a pistol that was recovered from Bowens' room at his mother's house during an unrelated investigation four months before his arrest. Bowens appealed and the Sixth Circuit reversed and remanded for resentencing.

The court noted that Bowens' earlier possession of the pistol should not have counted as relevant conduct because the circumstances surrounding that possession were unrelated to the offense of conviction. *Id.* at 798 (citing U.S.S.G. § 1B1.3(a)(2)). It observed that "leaving a pistol under a pillow at his mother's house in January 2017 was not part of the same scheme or plan as possession of the two charged firearms four months later." *Id.* It also noted that leaving the gun at his mother's house was not "sufficiently connected or related as to be part of a single episode, spree, or ongoing series of offenses." *Id.* at 798-99.

In reaching this conclusion, the court focused on three factors: regularity, similarity, and timing. *Id.* at 799. Viewing the factors independently and together, they did not support a finding that possessing the pistol four months apart from the other weapons was part of the same course of conduct.

First, the court noted that "[t]here is no regularity . . . because there are only two instances of unlawful gun possession." *Id.* at 799. It further observed, "regularity is

'completely absent' where the government shows only one other offense." *Id.* (quoting *United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018)).  The same is true in the instant matter.

The court next noted that the two incidents were "similar only in the broadest terms: they were both illegal gun possessions." *Id.*  Characteristics about the firearm possessions must be similar "beyond the act of unlawfully possessing a gun." *See Amerson*, 886 F.3d at 570-71 ("For two, non-contemporaneous illegal firearm possessions to be considered part of the same course of conduct, they must, among other factors, be connected by strong evidence of similarity.")

Finally, the court considered the timing of the incidents, noting that when there are only two instances of conduct, "there must be strong similarity and close temporal proximity to make up for it." *Bowens*, 938 F.3d at 800.  While four months was "not a very long span of time," it was not short enough to make up for the lack of similarity and regularity in *Bowens*.  *See also Amerson*, 886 F.3d 568 (recognizing nine months as sufficient for upholding a course of conduct determination involving *several* illegal firearm possessions).

The Sixth Circuit has described the approach to these factors as a sliding scale. *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008).  When one of the factors is absent, a stronger presence of at least one of the other factors is required.  *Id.*  Since more than 17 months elapsed between Storck's *two* firearm incidents, similarity would need to be particularly strong to compensate for the other factors.  And the two incidents here have no apparent similarity, aside from the mere fact of unlawfully possessing a gun, which the Sixth Circuit has explained is insufficient.  *See Amerson*, 886 F.3d at 570-71.  Based on the foregoing, the two-level increase under § 2K2.1(b)(1) does not apply.

### C. Possession in Connection with Another Felony Offense

Storck's next objection concerns paragraph 21 of the PSR, which assigns a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B). That section of the guidelines indicates that, if the defendant used or possessed any firearm or ammunition in connection with another felony offense, the base offense level should be increased by four levels. This enhancement is based on Storck's actions on November 8, 2021, when he fired shots into the occupied residence at 501 Courchelle Drive. Felony charges for Wanton Endangerment-First Degree are currently pending against Storck in Jessamine Circuit Court based on this conduct. [*See* PSR ¶¶ 21, 55.] Storck essentially argues that his actions may constitute *second* degree wanton endangerment (i.e., a misdemeanor), but they did not constitute *first* degree wanton endangerment (i.e., a felony).

"Another felony offense" for purposes of subsection (b)(6)(B) means "any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought or a conviction obtained." *United States v. Kelley*, 585 F. App'x 310, 312 (6th Cir. 2014) (quoting § 2K2.1(b)(6)). The enhancement should apply "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* The government has the burden of establishing the supporting factors by a preponderance of the evidence. *Id.* (citing *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014)).

Under Kentucky law, a defendant is guilty of first-degree wanton endangerment "when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." K.R.S. § 508.060. A defendant is guilty of second-degree wanton

endangerment "when he wantonly engages in conduct which creates a substantial danger of physical injury to another person." K.R.S. § 508.070.

The differences between first- and second-degree wanton endangerment are the mental state and degree of danger created. *Swan v. Com.*, 384 S.W.3d 77, 102 (Ky. 2012). Both crimes require wanton behavior, but first-degree also requires "circumstances manifesting extreme indifference to the value of human life," which has been described as "aggravated wanton[n]ess." *Id.* (citing *Ramsey v. Commonwealth,* 157 S.W.3d 194, 197 (Ky.2005)). With respect to the danger created, first-degree requires a substantial danger of death or serious physical injury, whereas second-degree requires only a substantial danger of physical injury. *Id.*

The Supreme Court of Kentucky has explained that "firing a weapon in the immediate vicinity of others is the prototype of first-degree wanton endangerment. This would include the firing of weapons into occupied vehicles or buildings." *Id.* Proof that the defendants in *Swan* fired their guns near victims assembled in the living room of a residence was "ample proof to support the first-degree convictions related to those victims." *Id.* at 102-03. Likewise, Kentucky's highest court has concluded that shooting through the front door of an occupied residence constituted first-degree wanton endangerment. *Paulley v. Com.*, 323 S.W.3d 715, 724 (Ky. 2010).

Storck argues that "there was no testimony at trial that indicated that anyone was in the upstairs bathroom at the time the shooting occurred." That does not matter. The fact remains that Storck fired shots into an occupied residence. And there is no requirement that Storck knew whether the residence was actually occupied at the moment he shot the gun. *See Davis v. Com.*, 2017 WL 4217354, *3 (Ky. Ct. App. Sept. 22, 2017) (observing that the Kentucky

Supreme Court upheld the defendant's first-degree wanton endangerment conviction, noting that there was no requirement that the defendant knew whether an apartment was occupied when he shot into it).

Testimony at trial revealed the extreme wantonness of Storck's conduct, as a child living at 501 Courchelle Drive had been brushing her hair in the bathroom just moments earlier in the same area where Storck's bullets penetrated the window. Further, his actions occurred at a time when people were likely to be awake and stirring, and his actions of shooting into an occupied residence without question demonstrated an extreme indifference to the value of human life. Application of the four-point enhancement under § 2K2.1(b)(6)(B) is clearly proper according to the evidence presented during trial.

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's objections to the PSR are **OVERRULED**, in part and **SUSTAINED**, in part, consistent with this Memorandum Order and Opinion.

Dated: July 20, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky